UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
NOV 30 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 06-63-GWU

SHIRLEY HALL, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Shirley Hall, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of chronic obstructive pulmonary disease, tobacco abuse, a history of irregular heartbeat, anemia, arthralgias, and a history of major depression. (Tr. 18). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Hall retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 19-22). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "medium" level exertion, and also had the following non-exertional restrictions. (Tr. 86). She: (1) could have no exposure to heat, humidity, fumes, odors, dust, or gases; (2) was able to carry out simple tasks in small group settings;

and (3) had a "moderately limited" ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, and to respond appropriately to changes in the work setting. (Tr. 86-7). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 87-9).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Although the plaintiff alleged disability due to shortness of breath and heart problems, and also described a history of weakness, musculoskeletal pain, and nervousness/depression (Tr. 61-2, 66, 68), the only specific functional limitations given were by state agency reviewing sources, whose opinions are identical to the hypothetical factors given by the ALJ to the VE (Tr. 291-6, 326-8, 344-50).

As far as her mental status was concerned, the plaintiff was seen for several years by sources at the Comprehensive Care Center (CCC), including the staff psychiatrist, Dr. John Schremly, who initially diagnosed "moderate" major depressive disorder with a Global Assessment of Functioning (GAF) score of 55. (Tr. 282-3).

A GAF score in this range reflects moderate symptoms. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. Mrs. Hall was admitted to the psychiatric unit at the Appalachian Regional Hospital for five days in April, 2004 due to depression with suicidal ideation, partially connected to a number of situational factors including separation from her husband, the recent death of her mother, and her electricity being turned off. (Tr. 433). By the date of discharge, however, the staff psychiatrist, Dr. Lloyd Bentley, described Mrs. Hall as friendly and cooperative with good eye contact, noted that she was eating and sleeping well, that her affect had brightened appreciably, and that she denied any suicidal ideation. (Tr. 434). She was also noted to have no physical complaints. (Id.). Her GAF on discharge was said to be 60 with a good prognosis if she remained in therapy. (Id.). A GAF of 60 reflects only mild symptoms. DSM-IV-TR, p. 34.

Subsequent records from Dr. Schremly include a September, 2004 GAF score of 55 (Tr. 374), and 2005 office notes indicating that she was not as depressed in March 2005 (Tr. 462), and her statement that she was "a lot better" in June, 2005 (Tr. 458).

Therefore, despite her brief hospitalization, the plaintiff failed to establish that she would be limited to a greater degree than indicated by the state agency psychological reviewer. Counsel for the plaintiff argues on appeal that the ALJ did

not adequately discuss her psychiatric hospitalization, but the ALJ's summary is adequate (Tr. 17), and it does not change the fact that her condition was greatly improved after a few days, in any case.

As far as her physical condition is concerned, Mrs. Hall was seen by variety of sources, including physicians at the Kentucky Lung Clinic, who found moderate obstructive lung disease on a pulmonary function test. (Tr. 222). However, no specific functional restrictions were given, and the plaintiff continued to smoke cigarettes against medical advice. (E.g. Tr. 221, 228, 400). Her complaints of chest pain and palpitations were evaluated in 2000, prior to her alleged onset date, with tests including an echocardiogram and Holter Monitor, which were largely normal. (Tr. 244, 251). Repeats of these tests in 2004 were also essentially normal. (Tr. 361-2, 434). Mrs. Hall's treating family physician, Dr. Rajiv Srinivas, obtained the 2004 testing after complaints of shortness of breath on exertion (Tr. 405), but did not change her medication regimen afterwards (Tr. 403). He also investigated complaints of pain in the shoulder blades, but an x-ray and CT scan of the thoracic spine showed no significant abnormalities. (Tr. 360-1, 403). Dr. Srinivas prescribed Vioxx, as well as supplements for osteoporosis (Tr. 425), but did not list any functional restrictions. The opinions of state agency reviewing sources, who provided restrictions against working around pulmonary irritants, heat, and humidity,

despite the plaintiff's continued smoking (Tr. 291-6, 344-50), are also uncontradicted.

Counsel for the plaintiff argues that the ALJ did not provide an adequate discussion of her credibility, but the ALJ noted Mrs. Hall's subjective complaints in detail and the hearing decision contains his explanation that pulmonary function studies did not support her claims that she would become out of breath simply by walking from one room to the next. (Tr. 17-19, 63).

The decision will be affirmed.

This the 30 day of November, 2006.

G. WIX UNTHANK
SENIOR JUDGE